# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

OWEN ROSENBERG, CARRIE
MCDOUGLE, CHRIS LEMKE, and
ANGELA MILLER,

                    Plaintiffs,

v.

S.C. JOHNSON & SON, INC.,

                    Defendant.

Case No. 20-CV-869-JPS

**ORDER**

## 1.    INTRODUCTION

On June 8, 2020, Plaintiff Owen Rosenberg ("Rosenberg")[1] filed this lawsuit, pleading class allegations based on labeling claims of non-toxicity on Windex products. ECF No. 1. On September 28, 2020, Defendant S.C. Johnson & Son, Inc. ("Defendant") filed a motion to dismiss the complaint. ECF No. 4. On October 19, 2020, Rosenberg filed an amended complaint,

---

[1]On April 8, 2022, Plaintiffs filed a notice of voluntary dismissal of Rosenberg's claims. ECF No. 40. As neither an answer nor a motion for summary judgment has been filed, the Court will adopt the stipulation. Fed. R. Civ. P. 41(a)(1)(A)(i). Because the notice does not state otherwise, Fed. R. Civ. P. 41(a)(1)(B), the dismissal will operate without prejudice. Any subsequent reference to "Plaintiffs" will refer to only the three remaining Plaintiffs: Carrie McDougle, Chris Lemke, and Angela Miller.

Rosenberg's dismissal does not affect the Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 676 (7th Cir. 2006); *Genenbacher v. CenturyTel Fiber Co. Il, LLC*, 500 F. Supp. 2d 1014, 1015 (C.D. Ill. 2007) ("Subsequent changes to the residency of the parties or the amount in controversy" does not destroy "diversity of citizenship under CAFA").

which added Plaintiffs Carrie McDougle, Chris Lemke, and Angela Miller ("Plaintiffs"). ECF No. 12. On November 16, 2020, Defendant filed a motion to dismiss the amended complaint. ECF No. 14. On August 2, 2021, the Court denied the motion to dismiss the complaint as moot, granted in part the motion to dismiss the amended complaint, and afforded Plaintiffs leave to amend the amended complaint. ECF No. 21. On August 23, 2021, Plaintiffs filed their second amended complaint. ECF No. 22.

On September 7, 2021, Defendant filed a motion to dismiss the second amended complaint and a motion to stay. ECF Nos. 23, 25. The motion to stay was premised on a parallel class action that had been filed in California state court on July 15, 2020, following the commencement of this action: *Clark v. S.C. Johnson & Son, Inc.*, No. RG20067897 (Cal. Super. Ct.) (the "*Clark* Action"). ECF No. 32 at 1–3; ECF No. 43-2. On October 18, 2021, the Court granted the motion to stay. *Id.* The Court noted that "[t]he crux of [Plaintiffs'] opposition to the motion for a stay [wa]s that the Clark settlement is unfair" and constituted a "reverse auction." *Id.* at 2–3. However, the Court explained that another party had raised this concern before the California state court, the *Clark* Action received preliminary approval, and that "the issue of whether to approve a potentially reverse-auctioned settlement [wa]s not before this Court; that is something for the [California state] court to determine . . . . [I]f the [California state] court is satisfied with the settlement, then the class claims raised in this litigation may well be foreclosed." *Id.* at 3.

On February 28, 2022, the Court lifted the stay following the parties' notification that the California state court had granted final approval of a class settlement in the *Clark* Action. ECF No. 36. Thereafter, in accordance with the Court's protocols (as it presumably followed a meet-and-confer,

*see* ECF No. 30), Plaintiffs filed a third amended complaint. ECF No. 41. On May 13, 2022, Defendant filed a motion to dismiss the third amended complaint, or in the alternative to strike the class allegations, on the basis of the settlement in the *Clark* Action. ECF No. 42. That motion is now fully briefed, ECF Nos. 43, 45, 46, and for the reasons set forth herein, the motion will be granted in part and denied in part.

## 2. LEGAL STANDARDS

### 2.1 Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a case where the Court lacks subject matter jurisdiction. When faced with a jurisdictional challenge, the Court accepts as true the well-pleaded factual allegations found in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Ctr. For Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In this context, the Court may also consider extrinsic evidence adduced by the parties. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

### 2.2 Rule 12(b)(6) and Rule 9(b)

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal citations and quotations omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal citations and quotations omitted).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, the Plaintiff must set forth the "who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).

### 3.    RELEVANT FACTS

#### 3.1    Underlying Allegations

Plaintiffs are three individuals who bought certain Windex "Non-Toxic Formula" products, believing such purchases would "avoid harm caused by harsh chemicals." ECF No. 41 at 15. The products in question are Windex Original Glass Cleaner, Windex Multi-Surface Cleaner, Windex Vinegar Cleaner, and Windex Crystal Rain (Ammonia-Free) (collectively, the "Products"). *Id.* at 14–15. Each Product boasts a "non-toxic formula." *Id.* at 6.

Plaintiffs contend that "[i]n spite of the labeling, the Products contain, in varying combinations, ingredients that are harmful to humans, animals, and/or the environment." *Id.* at 8. Plaintiffs list which of the

Case 2:20-cv-00869-JPS   Filed 02/07/23   Page 4 of 27   Document 49

Products contain which ingredients and explain the harm that they attribute to each listed ingredient. *Id.* at 9–12. According to Plaintiffs, "Defendant's branding and packaging of the Products is designed to—and does—deceive and mislead consumers." *Id.* at 12. Moreover, "[t]he marketing of the Products as 'non-toxic' has a material bearing on price and consumer acceptance of the [P]roducts because consumers are willing to pay more for such Products"; in other words, "[a]s a result of the false and misleading labeling, the Products are sold at a premium price." *Id.* at 12–13. Plaintiffs allege that had they "known the truth, they would not have bought the [P]roducts or would have paid less for them." *Id.* at 12.

The Federal Trade Commission has promulgated a series of regulations known as the "Green Guides" to "help marketers avoid making environmental marketing claims that are unfair or deceptive." *Id.* at 6 (quoting 16 C.F.R. § 260.1). These regulations forbid misrepresentations, "directly or by implication, that a product, package, or service is non-toxic," either to humans or the environment generally. *Id.* at 7 (quoting 16 C.F.R. § 260.10(a)). The Green Guides instruct marketers to "have reliable scientific evidence" that the product in question "is non-toxic for humans and for the environment." *Id.* (citing 16 C.F.R. § 260.10(b)). The Environmental Protection Agency has commented that it "believes that marketers will rarely, if ever, be able to adequately qualify and substantiate such a claim of 'non-toxic' in a manner that will be clearly understood by consumers." *Id.* (citation and internal quotations omitted).

The National Advertising Division of the Council of Better Business Bureaus, Inc. (the "NAD") "examines advertising claims made for . . . 'green' or natural claims." *Id.* at 7–8. Around March 2020, the NAD launched an investigation into the Products' non-toxic claims and found

that the term "non-toxic" as used by the Products signifies to reasonable consumers that the Products will not be harmful to people, common pets, or the environment. *Id.* at 8. The NAD also concluded that a reasonable consumer's understanding of "will not harm" is not limited to toxins that cause death, but "also various types of temporary physical illness, such as vomiting, rash and gastrointestinal upset." *Id.* (citation and internal quotations omitted).

> Plaintiffs' putative class is defined as
>
> [A]ll consumers who reside in the United States (except for residents of California or New York) who purchased any of the Products in the United States (except for purchases of the Products made in the states of California or New York), who bought any of the Products during the time period June 8, 2017 to the time of trial. ("Class").
>
> Plaintiffs also seek to represent a sub-class of Wisconsin residents who purchased the Products in the state of Wisconsin at any time during the time period June 8, 2017 to the time of trial. ("Wisconsin Sub-Class").

*Id.* at 16. Plaintiffs plead claims (1) under the Wisconsin Deceptive Trade Practices Act ("DTPA"), which they assert "applies to a Class of purchasers of Defendant's products bearing the Non-Toxic label, both within and outside of Wisconsin, who have been harmed as a result," given that Defendant's "Non-Toxic marketing program was devised, implemented and directed from Defendant's headquarters in Racine, Wisconsin," and (2) for unjust enrichment.[2]

---

[2]In its August 2, 2021 order, the Court dismissed Plaintiffs' unjust enrichment claim without prejudice given Plaintiffs' voluntary dismissal of the same. ECF No. 21 at 2 n.2. Plaintiffs now replead the unjust enrichment claim. ECF No. 41 at 18. "Under Wisconsin law, unjust enrichment claims require proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance

Case 2:20-cv-00869-JPS   Filed 02/07/23   Page 6 of 27   Document 49

### 3.2 The *Clark* Action[3]

The plaintiffs in the *Clark* Action also alleged that the non-toxic label on the Products is false and misleading because the Products contain ingredients harmful to people, pets, and the environment, and that consumers paid a premium due to the non-toxic labels. ECF No. 43-2 at 2–3; ECF No. 43 at 11–12. The settlement class in the *Clark* Action was defined as

> [A]ll persons that, [d]uring the Class Period, both resided in the United States and purchased in the United States any Product for personal and household use and not for resale . . . . The "class period" is "the time period from the date when SC Johnson initially labeled the Products as non-toxic to [July 9, 2021]."

ECF No. 47-1 at 60; ECF No. 46 at 10. The *Clark* Action settlement was preliminarily approved on July 9, 2021, and the *Clark* court granted final approval and certified the settlement class on February 14, 2022. ECF No. 47-1 at 60; ECF No. 43-3.

The release in the *Clark* Action binds the entire class, except for "[t]welve people [who] have opted out of the class and shall not be bound by the terms of the Settlement Agreement." ECF No. 43-3 at 13; ECF No. 43-4 at 10–11 ("Based on the release contained in this Agreement, any member

---

or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1055 (W.D. Wis. 2018).

At this juncture, the Court dismisses the unjust enrichment claim with prejudice. Plaintiffs plead that the Products are available from "retail and online stores of third-parties." ECF No. 41 at 1. Purchase from a retailer and not the defendant is insufficient to plead unjust enrichment, because the plaintiff confers a benefit on the retailer and not on the defendant. *Blitz*, 317 F. Supp. 3d at 1056.

[3]The Court may take judicial notice of the public court documents filed in the *Clark* Action. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

of the Settlement Class who does not Opt-Out will be barred from bringing any action in any forum (state or federal) . . . concerning any of the matters subject to the release."); *id.* at 18–19 (clause enjoining *Clark* Action class members from, among others, litigating or participating in any other action regarding the released claims). The three remaining named Plaintiffs in the instant action are among the twelve people who opted out of the *Clark* Action settlement. ECF No. 43 at 7. In turn, the Settlement Agreement defines the "Released Claims" as, in pertinent part,

> any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss, cost, attorneys' fee or expense, action, or cause of every kind and description that Plaintiff, the Settlement Class, or any member thereof had or have based on labeling or advertising the Products as "non-toxic" or similar statements on a Products' packaging, a Website or other advertising during the Class Period.

ECF No. 43-4 at 5.

As noted above, the Court held in its October 18, 2021 order granting a stay that the issue of whether the *Clark* Action settlement is a "reverse-auctioned"[4] settlement was for the California state court to decide. ECF No. 32 at 3. And the *Clark* court did just that. In its final approval order, the *Clark* court considered arguments relating to an alleged "reverse auction" raised by an intervenor, who was a named plaintiff in another pending federal class action similar to the instant action in the Northern District of

---

[4]As the Court previously explained, a "reverse-auctioned" settlement is "a practice 'whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in [*sic*] the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.'" ECF No. 32 at 2–3 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)).

California.[5] The named Plaintiffs in the instant action, represented by the same counsel representing them in the instant action, moved to intervene in the *Clark* Action, ECF No. 43-6, but withdrew the motion after the *Clark* named plaintiff brought a conflict to the Court's attention; namely, that Plaintiffs' counsel was his counsel in another matter, and he never signed a conflict waiver. ECF No. 46 at 9.

The *Clark* court referred to the proffered "reverse auction" arguments as "rais[ing] a significant red flag, which calls for further examination." ECF No. 43-3 at 4. After thoroughly analyzing the intervenor's concerns, the *Clark* court concluded, in pertinent part, that

> The entirety of the circumstantial evidence of possible collusion or reverse auction conduct, when viewed in the context of the terms of the Settlement Agreement, does not rise to a level that would support a finding of bad faith on the part of Plaintiff's counsel, or a finding that SC Johnson did anything except mediate a reasonable resolution of the case.
>
> Further, the amount of the proposed settlement is within the range of reasonableness given the case law concerning damages in a labeling case, and the injunction is a significant victory; it is meaningful and valuable to the class. The release is narrow. The deal lacks indicia that it was reached at the expense of absent class members, or other indicia of collusion or bad faith. The terms of the Settlement Agreement appear fair and reasonable, given the strength of the claims against SC Johnson on the merits.

---

[5]That case was voluntarily dismissed following final approval in the *Clark* Action because neither named plaintiff opted out of the *Clark* Action settlement, despite one of the named plaintiffs objecting to the settlement. *In re: S.C. Johnson & Son, Inc. Windex Non-Toxic Litigation*, 20-CV-3184-HSG, ECF No. 86 (N.D. Cal. Apr. 19, 2022). Another putative class action where the named plaintiffs do not appear to have opted out of the *Clark* Action settlement is pending in the Southern District of New York. *See Rivera, et al. v. S.C. Johnson & Son, Inc.*, No. 20-CV-3588-RA (S.D.N.Y. May 7, 2020).

*Id.* at 11–12. Accordingly, the *Clark* court overruled the intervenor's objection. *Id.* at 12–13.

In granting final approval, the *Clark* court determined that it "ha[d] jurisdiction over the subject matter of th[e] action, the parties to th[e] action, and the members of the settlement class." *Id.* at 12. The *Clark* court also found that the notice to the *Clark* settlement class satisfied the requirements of due process, despite the intervenor's objection that the notice was "fatally inadequate and failed to use the best practicable means to inform the Class," ECF No. 47-1 at 19:

> The Class Notice conforms with the requirements of California Code of Civil Procedure section 382, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing due and adequate notice to Settlement Class Members of the proceedings and of the matters set forth therein. The Class Notice informed the Settlement Class of the terms of the Settlement, of their right to receive their proportional Settlement payment, of their right to request exclusion from the Settlement Class and the Settlement, of their right to comment upon or object to the Settlement and to appear in person or by counsel at the final approval hearing on this date. The Class Notice satisfied the requirements of due process.

ECF No. 43-3 at 15.

The *Clark* Action settlement agreement included an "injunctive clause" whereby, within 90 days of the "effective date," Defendant "shall begin manufacturing Products without the allegedly misleading 'non-toxic' claim on the Product labels" and "modify the content of [its] Website(s) to correspond to the labeling changes." ECF No. 43-4 at 12. The "effective date" was, if no appeal was taken from the final approval order, 35 days

Case 2:20-cv-00869-JPS    Filed 02/07/23    Page 10 of 27    Document 49

thereafter, or if an appeal was taken, the date on which all appellate rights were finally exhausted. *Id.* at 4. In granting final approval, the *Clark* court found that

> The injunctive relief provision is broad and remediates the alleged harm to consumers that Plaintiff claims in this action. At the hearing for preliminary approval, counsel for Defendant re-confirmed that the injunction will bar SC Johnson from using the 'non-toxic' marketing claim on any household cleaning products unless and until there is some material change in fact, such as SC Johnson ceasing use of the ingredients identified by Plaintiff in the complaint as problematic, or in law, as where the FDA adopts regulations governing the use of that claim and a product complies with that new regulation.

ECF No. 43-3 at 9. The court also found that "SC Johnson has already stopped producing Windex products with a 'non-toxic' label." *Id.* at 7–8.

**4.    ANALYSIS**

Defendant moves to dismiss the third amended complaint or, in the alternative to strike the class allegations, on multiple grounds. Those grounds can be boiled down to assertions that (1) the Court lacks jurisdiction to hear Plaintiffs' collateral attack of the *Clark* Action settlement and, even if it had jurisdiction, a collateral attack is not viable; (2) the putative class claims should be dismissed because Plaintiffs relinquished their ability to proceed as a class by opting out of the *Clark* Action settlement; (3) the putative class claims should be dismissed because the putative class members are barred from pursuing their claims either due to res judicata or because they released their claims in the *Clark* Action settlement; (4) Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23; and (5) Plaintiffs' individual claims are not adequately pleaded.

As an initial matter, the Court will not inquire into the requirements of Rule 23 at the motion to dismiss stage. "While there may indeed be issues with the proposed class . . . it is premature to engage in this analysis at the motion to dismiss stage. Rather, these issues are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification." *De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013); *see also DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-CV-1570, 2015 WL 1505675, at *4 n.2 (S.D. Ind. Mar. 31, 2015) (collecting cases holding the same). Thus, the Court will proceed to consideration of the parties' arguments regarding collateral attack and dismissal.

### 4.1    Collateral Attack

Plaintiffs "challenge the jurisdiction of the California state court [] with respect to the non-Californian putative class here." ECF No. 45 at 13. Specifically, Plaintiffs contend that it would violate due process to hold that the California state court in the *Clark* Action may assert jurisdiction over claims by putative class members outside of California against Defendant— a Wisconsin corporation. *Id.* at 16. Additionally, according to Plaintiffs, this action alleges different claims than those in the *Clark* Action, as the claims here arise under Wisconsin substantive law in lieu of California substantive law. *Id.* at 19. As a result, "California has nothing whatsoever to do with the claims here" and "the California state court does not have jurisdiction over the Wisconsin claims at issue here . . . To hold otherwise violates due process." *Id.* at 16.

Defendant, citing *Kamilewicz v. Bank of Boston Corp.*, argues that the Court lacks jurisdiction over any such collateral attack under the *Rooker-Feldman* doctrine. 92 F.3d 506, 509 (7th Cir. 1996) (citing *Rooker v. Fidelity*

*Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Plaintiffs counter that *Rooker-Feldman* is inapposite, as it applies only to preclude federal jurisdiction over cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered *before* the district court proceedings commenced." ECF No. 45 at 14 (quoting *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 590 (7th Cir. 2005) (emphasis added)). Here, of course, the *Clark* court's order granting final approval was entered—and indeed the entire *Clark* action was commenced—following the commencement of this action.

*Kamilewicz* presents nearly identical facts to those here, apart from the timing difference that Plaintiffs raise. There, the court applied *Rooker-Feldman* to bar federal review where "the Alabama court specifically found the [nationwide class] settlement to be fair and approved the fees . . . [and] found that the notice complied with all requirements of due process." 92 F.3d at 510. The court reached this conclusion despite noting that *Rooker-Feldman* is not an easy fit, as the doctrine generally comes into play where a state court *defendant* later files suit as a federal court plaintiff. *Id.* at 511. Despite this difference, the court concluded that "[m]ore important, however, is the fact that the plaintiffs' injuries are a result of the state court judgment. Their claim in federal court is a multi-pronged attack on the approval of the settlement." *Id.* And tellingly, in response to the plaintiffs' argument that one of the state court's orders was entered after the federal lawsuit was filed, the Seventh Circuit explained that the timing issue was immaterial in the face of well-settled authority holding that "the losing party cannot move to a new forum but must present his argument to the court that rendered the judgment." *Id.* (quoting *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995)).

Nonetheless, in light of the timing discrepancy Plaintiffs raise, the Court agrees with Plaintiffs that the Seventh Circuit cases relying upon *Rooker-Feldman* are not a perfect fit and do not definitively mean that the Court lacks jurisdiction over Plaintiffs' collateral attack. Under these circumstances, the Court must turn to the related doctrine of res judicata to determine whether—and to what extent—it may hear Plaintiffs' collateral attack on due process grounds. *See, e.g.*, *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 413 (6th Cir. 2012) (applying principles of res judicata to collateral attack on due process grounds where federal lawsuit was filed before state lawsuit, but state court issued final approval of settlement during the pendency of the federal lawsuit).

The U.S. Supreme Court holds that

> [b]ecause States place fewer burdens upon absent class plaintiffs than they do upon absent defendants in nonclass suits, the Due Process Clause need not and does not afford the former as much protection from state-court jurisdiction as it does the latter . . . . *[A] forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts which would support personal jurisdiction over a defendant* . . . [if it] provide[s] minimal due process protections.[6]

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) (emphasis added). Those minimal due process protections, in turn, are (1) notice, (2) an opportunity to be heard, (3) an opportunity to opt out, and (4) adequate representation. *Hosp. Mgmt. Assocs., Inc. v. Shell Oil Co.*, 591 S.E.2d 611, 616 (S.C. 2004) (citing *Shutts*, 472 U.S. at 812). However, the U.S. Supreme Court

---

[6]For this reason, Plaintiffs' citation to, and argument based on, *Bristol-Meyers Squibb Co. v. Superior Court of California*, which addresses personal jurisdiction over *defendants* in nationwide class actions, is inapposite. 137 S.Ct. 1773 (2017).

has "left unresolved the proper scope of a federal court's collateral review of a state court's class action judgment for satisfaction of these due process requirements." *Hege v. Aegon USA, LLC*, 780 F. Supp. 2d 416, 426 (D.S.C. 2011) (citing *Matsushita Elec Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 370–71, 378, & n.5 (1996)).

Since *Matsushita*, the scope of collateral review of a due process challenge to a state court class action judgment is "an open, and hotly litigated question as to whether limited collateral review is required . . . or whether a broader, merits-oriented review is permitted." *Shell Oil Co.*, 591 S.E.2d at 618. "The question is whether the collateral court is constrained to a limited review, considering only whether the class action settlement court utilized adequate procedures to assure itself that the . . . due process requirements were met, or, instead, may engage in a broader, merits-based due process review." *Hege*, 780 F. Supp. 2d at 426; *see also* Sara Maurer, *Dow Chemical Co. v. Stephenson: Class Action Catch 22*, 55 S.C. L. Rev. 467, 477 (2004) (summarizing division among courts); *Scope of review on collateral attack*, 6 Newberg and Rubenstein on Class Actions § 18:37 (6th ed.) (same, but noting that there is also a middle-of-the-line approach based on whether the collateral attacker presented the specific objection to the class action court); *Limited availability and scope of collateral review*, 2 McLaughlin on Class Actions § 6:30 (19th ed.) (same).[7]

---

[7] While Plaintiffs explain that the U.S. Supreme Court has held that a collateral attack on due process grounds is permissible, ECF No. 45 at 13, neither side brought the circuit split regarding the dispositive question of law, i.e., the scope of review on a collateral attack, to the Court's attention. The Court expects the parties, as officers of the Court, to *thoroughly* research any issue they bring to the Court for disposition, and to provide all relevant authority on the same.

The Ninth, Third, and First Circuits have opted for the former, limited approach, or the middle-of-the-line approach. *See Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999) ("Due process requires that an absent class member's right to adequate representation be protected by the adoption of the appropriate procedures by the certifying court and by the courts that review its determinations; due process does not require collateral second-guessing of those determinations and that review."); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1558 (3d Cir. 1994) ("Not only did plaintiff . . . pursue the adequacy of representation and disclosure claims through the Delaware court system to its highest court, but . . . he petitioned the United States Supreme Court to hear the case. When the Supreme Court declined to disturb the decision of the Delaware Supreme Court, he and the other class members had been granted all the process that was due." (internal citations omitted)); *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 33 (1st Cir. 1991) ("The Delaware courts, affording all the prophylaxis which the Due Process Clause commands, adjudicated the question of whether appellants had a right, or should have been allowed, to opt out of the settlement. If, having objected and been overruled, appellants were still dissatisfied with the Delaware judgment, their recourse was to the United States Supreme Court by means of certiorari, not to the lower federal courts in the vain pursuit of back-door relief.").

So has the Supreme Court of South Carolina, and multiple other state courts. *Shell Oil Co.*, 591 S.E.2d at 620 ("[D]ue process requires that an absent class member's rights are protected by the adoption and utilization of appropriate procedures by the certifying court . . . . [D]ue process does not afford any second-guessing of those determinations.") (internal citations omitted); *see also, e.g., Palmer v. Gentek Building Prods., Inc.*, 936 N.W.2d 552,

557 (N.D. 2019); *Lamarque v. Fairbanks Cap. Corp.*, 927 A.2d 753, 765 (R.I. 2007).

In contrast, the Sixth and Second Circuits have followed the latter, broader approach, as has arguably the Fifth Circuit. *Gooch*, 672 F.3d at 420 (concluding that "in deciding whether to afford [state court certification of nationwide class settlement] full faith and credit, we may review the substance of whether that settlement complied with the Due Process Clause," and proceeding to consider the merits of the *Shutts* due process requirements); *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 259 (2d Cir. 2001), *aff'd in part, vacated in part on other grounds*, 539 U.S. 111 (2003) (considering *Shutts* due process requirements on their merits); *see also Gonzales v. Cassidy*, 474 F.3d 67, 72 (5th Cir. 1973) (inquiring into the merits of "the class representative's conduct of the entire suit," which is "appropriate in a collateral attack on the judgment").

So has the United States District Court for the District of South Carolina in one instance, and other state courts. *Hege*, 780 F. Supp. 2d at 429 (following *Stephenson* and concluding that "policy considerations favor a more searching inquiry [into due process] in this case"); *but see Weaver v. Aegon USA, LLC*, No. 14-CV-3436-RBH, 2016 WL 1570158, at *2 (D.S.C. Apr. 19, 2016) (following limited approach: "The Court followed the majority view of federal courts regarding the scope of collateral review of previous state court judgments and found that federal courts have subject matter jurisdiction to determine whether the procedures in the state court litigation gave a party the 'full and fair opportunity' to litigate the claim."); *see also State v. Homeside Lending, Inc.*, 826 A.2d 997, 1017 (Vt. 2003).

Other circuits, including the Seventh Circuit, have not squarely addressed the question. *See Stephenson*, 273 F.3d at 259 (citing *Williams v.*

*Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998)). Both the Sixth and the Second Circuits characterize the Seventh Circuit's opinion in *Williams* as persuasive authority addressing due process considerations of a prior class action settlement on collateral attack. *Id.*; *Gooch*, 672 F.3d at 421. In *Williams*, the Seventh Circuit considered an appeal of the Northern District of Illinois's order enjoining further prosecution of a duplicate class action that was filed in the Middle District of Florida following settlement of the Northern District of Illinois suit. 159 F.3d at 268. The majority of the Seventh Circuit's opinion was devoted to considering whether the claims were sufficiently overlapping such that the Northern District of Illinois could enjoin the entire Middle District of Florida suit. *Id.* at 272–74. Briefly, at the conclusion of the opinion, the Court turned to the plaintiffs' "due process attack on the adequacy of representation and opt-out notice in the [Northern District of Illinois case] certification." *Id.* at 274. The Seventh Circuit found that one of the arguments was insufficiently developed on appeal and was waived, and that the second merited "*scarcely more* discussion." *Id.* at 274 (emphasis added).

That scarce further discussion involved an inquiry into whether the lower court had considered the due process attack. *Id.* at 274–75. The Seventh Circuit concluded that the lower court had implicitly considered the issue at certification, and "rejected exactly the same due process claim" at the fairness hearing when presented by an objector. *Id.* Thus, the Seventh Circuit found "no due process bars" in the lower court's way. *Id.*

The *Williams* opinion, though dealing with a lower federal settlement, combined with the Seventh Circuit case law applying *Rooker-Feldman* to cases where a state court action is filed and settlement is approved prior to initiation of the federal suit, lead the Court to conclude

that the limited approach is the appropriate approach to apply. *See also Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982) ("Where we are bound by the statutory directive of § 1738, state proceedings need do no more than satisfy the minimum *procedural* requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law.") (emphasis added). This conclusion is bolstered by the circumstances of this case.

For example, one of the factors driving both the Sixth and Second Circuits to adopt the broader approach was the fact that the due process challenge was not litigated, or not thoroughly litigated, by the state court. *Gooch*, 672 F.3d at 421 (distinguishing the broader approach because it applied to circumstances where "the adequacy of the representation of the absent class member was litigated and determined," as compared to a "passing rubber-stamp reference" by the state court in the case at bar (internal citations omitted)); *Stephenson*, 273 F.3d at 257–58 (permitting merits review of due process requirements in part because the lower court had not "addressed specifically" the argument). For the District of South Carolina, the main factor behind its decision to adopt the broader approach was the fact that the underlying state law precluded the "absent class member's ability to mount substantive challenge to the settlement court's due process compliance on direct appellate review." *Hege*, 780 F. Supp. 2d at 428. Specifically, the underlying Arkansas law only permitted appeal of a class settlement by class members who had intervened. *Id.* at 422–23.

By contrast, here, the California state court thoroughly analyzed due process, including the specific jurisdictional arguments Plaintiffs raise now. As earlier explained, a forum state may exercise jurisdiction over absent class members—even without the minimum contacts that support personal

jurisdiction over defendants—if the *Shutts* due process factors are met. As to those factors, Plaintiffs took issue in the *Clark* Action, and take issue now, with the form of the notice and adequacy of representation, the latter encompassing their argument that the settlement was a "reverse auction." The California state court considered and adjudicated these concerns in both the preliminary approval order and the final approval order. ECF No. 47-1 at 56–63; ECF No. 43-3. The Court concurs in this determination. "It would run counter to the class action goals of efficiency and finality to allow successive reviews of issues that were, in fact, fully and fairly litigated in the rendering court." *Shell Oil Co.*, 591 S.E.2d at 659. In this instance, "[w]ithout limited review, a nationwide class action could be vulnerable to collateral actions in the 49 other states in which it was not litigated." *Id.*

Additionally, unlike the Arkansas law in *Hege*, the applicable California state law affords a method other than intervention to gain standing to appeal. *See Hernandez v. Restoration Hardware, Inc.*, 409 P.3d 281, 285–86 (Cal. 2018) (explaining that, under California law, the right to appeal class action judgments may adhere to unnamed class members who either (1) intervene or (2) file "an appealable motion to set aside and vacate the class judgment"). Even if it did not, Plaintiffs *did* intervene in the *Clark* Action and made the strategic choice to withdraw their motion. In other words, Plaintiffs had their chance to intervene, decided to do so, and by later choosing to withdraw their motion to intervene, effectively waived the argument. They may not now pursue "back-door relief" in this Court. *Nottingham Partners*, 925 F.2d at 33; *see also In re Deepwater Horizon*, 819 F.3d 190, 199 (5th Cir. 2016) ("While absent class members may collaterally attack a class action judgment for a lack of notice and due process, Mason

was *arguably not absent because his counsel had actual notice of the Agreement.*")
(emphasis added).

Therefore, for all these reasons, the Court applies the limited approach. The analysis requires the Court to first "look to the law of the rendering State to ascertain the effect of the judgment" and then determine, if the settlement carries preclusive effect under state law, whether it complies with the procedural federal due process requirements. *Epstein*, 179 F.3d at 644; *see also Gooch*, 672 F.3d at 419. The Court answers both questions in the affirmative.

"In California, the principles of res judicata and collateral estoppel apply in the class action context to bar later relitigation of claims by absent class members . . . as long as there was sufficient notice and opportunity to opt out, and adequate representation of the class members in the earlier case." *Valdez v. Pizza Hut, Inc.*, No. D050826, 2008 WL 3523192, at *6–*7 (Cal. Ct. App. Aug. 14, 2008) (unpublished) (collecting cases) (discussing *Shutts* factors). Thus, in this instance, the analysis as to preclusive effect and the federal due process requirements collapses. For the reasons explained above, these requirements were met here. Not only did the California state court consider the intervenor's due process arguments (the identical arguments Plaintiffs make here), but it also found the settlement "fair and reasonable," that the release was not overly broad, that the notice conformed with all requirements of due process, and that the named plaintiffs and their counsel adequately represented the class. ECF No. 47-1 at 56–63; ECF No. 43-3. Therefore, the Court denies any collateral attack on the *Clark* Action settlement.

### 4.2 Motion to Dismiss

Having determined that the *Clark* Action settlement is not susceptible to Plaintiffs' collateral attack, the Court turns to the "extent of overlap" between the *Clark* Action settlement and the instant action. *See Gooch*, 672 F.3d at 426. As noted, Plaintiffs argue that the instant action alleges different claims "specifically for violation[s] of Wisconsin substantive law" rather than those asserted in the *Clark* Action, which were "claims for violation[s] of California substantive law." ECF No. 45 at 19. Plaintiffs additionally argue that the class periods between the two actions are different, as the class period in the *Clark* Action terminated on July 9, 2021, while the class period as pleaded by Plaintiffs remains ongoing. *Id.*

As to Plaintiffs' first argument, the settlement agreement in the *Clark* Action is clear that the released claims include "any claim . . . of every kind and description . . . based on labeling or advertising the Products as 'non-toxic.'" ECF No. 43-4 at 5. The language of the agreement notwithstanding, both California law[8] and Seventh Circuit authority confirm that no matter how Plaintiffs label their claims, or under which state's law they raise them, they overlap with and are precluded by the claims in the *Clark* Action. *See Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 586 (2010) ("[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself."); *see also Williams*, 159 F.3d at 273–74 ("The weight of authority holds that a federal court may release not only

---

[8]California law applies to "determine whether an earlier state court action bars a later federal court action." *Novickas v. Proviso Twp. High Sch. 209*, No. 09-CV-3982, 2010 WL 3515793, at *1 (N.D. Ill. Aug. 31, 2010).

Case 2:20-cv-00869-JPS   Filed 02/07/23   Page 22 of 27   Document 49

those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action." (citations and internal quotations omitted)).

As to Plaintiffs' second argument, Defendant raises two points that require addressing. First, Defendant argues that Plaintiffs forfeited their ability to bring class claims when they opted out of the *Clark* Action settlement, and that they may now pursue only their individual claims. ECF No. 43 at 14. Second, it maintains that Plaintiffs should not be permitted to proceed on putative class claims for a class period following July 9, 2021 because they do not allege any purchase dates following July 9, 2021 in their third amended complaint, and they ignore that the record in the *Clark* Action "shows that SC Johnson stopped manufacturing Windex products with the 'non-toxic' labels *before* April 15, 2021." ECF No. 46 at 8 (emphasis in original).

The Court is not persuaded by either of Defendant's contentions. Defendant may be correct that a class member who opts out of one class action settlement may not thereafter commence "an identical class action." *Bank v. ICOT Holdings, LLC*, No. 118CV02554AMDPK, 2020 WL 10224833, at *2 (E.D.N.Y. Sept. 29, 2020). But as other courts have concluded in similar circumstances, the instant case is not an identical class action. The third amended complaint pleads a broader time period than that covered by the *Clark* Action settlement. This "considerable overlap . . . may ultimately defeat [Plaintiffs'] efforts to certify a class" but it does not, "at the motion to dismiss stage, extinguish [Plaintiffs'] class action claims." *Id.* at *3; *Gooch*, 672 F.3d at 427 (vacating class certification and remanding because while the plaintiff could not "represent class members who settled their claims in

[state court class action settlement], [and] the current class certification is invalid to the extent that it overlaps with [that] class," "[w]e cannot foreclose the possibility . . . that [the plaintiff] could serve as a class representative for some subset of the present class" including "those who opted out of the [state court class action settlement]").

That the third amended complaint does not allege any purchases by the named Plaintiffs after July 9, 2021 is not fatal either. "The plaintiff specifically describes two calls from the defendants in 2017 and 2018—a period of time that overlaps with the [prior class action] settlement—but the typicality requirement of Rule 23(a)(3) at this stage is not defeated by minor variations in the factual allegations among the various class members." *Bank*, 2020 WL 10224833, at *3; *see also MSP Recovery Claims, Series LLC v. Mallinckrodt ARD, Inc.*, No. 20-CV-50056, 2022 WL 3369275, at *3 (N.D. Ill. Aug. 16, 2022) ("Even when a proposed amended complaint would replace all named plaintiffs before class certification, the amendment is allowed unless jurisdiction never attached . . . or the attempt to substitute comes long after the claims of the named plaintiffs were dismissed." (citation and internal quotations omitted)).

Defendant may ultimately prove that there were no *purchases* of the Products after July 9, 2021. But at this stage, Defendant's allegation that it stopped *manufacturing* the Products before April 15, 2021, and the injunction in the *Clark* settlement regarding cessation of use of the "non-toxic" label, are insufficient. Simply because a Product has ceased to be manufactured does not mean that it has been removed from shelves or is otherwise unavailable for purchase. While the *Clark* settlement enjoined Defendant from using the "non-toxic" label as of the effective date, and the *Clark* court found that the label had ceased to be used prior to final

approval, neither the injunction nor the court's findings indicate that all Products with the "non-toxic" label were recalled or made unavailable for purchase as of April 2021.

Indeed, in its May 13, 2022 briefing, Defendant notes that the Products "*are* widely available" and that Plaintiffs "could have tested" the Products but "*have* not done so." ECF No. 43 at 26 (emphases added). Defendant may not have its cake and eat it too. In other words, it may not argue on the one hand that the Products are no longer available for purchase, but argue on the other hand that information about their contents is available to Plaintiffs for testing. Even if the Products ceased to be manufactured by April 2021, how could Plaintiffs test the Products in May 2022 if they were not otherwise somehow still available for sale?

Defendant makes this point to support its argument that Plaintiffs may not plead fraud upon "information and belief" because "the facts constituting the fraud are . . . accessible" to Plaintiffs. *Id.* "The general rule that fraud cannot be pled based on information and belief is not ironclad[]: the practice is permissible, so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). "The grounds for the plaintiff's suspicions must make the allegations *plausible*." *Id.* (emphasis in original). The Court will permit Plaintiffs to amend their complaint to include, for example, citations to websites or other authority to support their "information and belief" allegations about the specific physical harm they allege may result from each of the various ingredients in the Products.

*See* ECF No. 41 at 9–12. But the Court will not otherwise address accessibility of the Products given Defendant's conflicting statements.[9]

To summarize, like in *Bank* and *Gooch*, those who opted out of the *Clark* Action settlement, as well as those who purchased the Products following July 9, 2021, may still be able to proceed in some fashion, either individually or as a class. The Court will not make any determinations on these questions at the motion to dismiss stage, because, as explained above, discovery has not been completed, and the issue of class certification is not now before the Court. At this juncture, the Court has definitively concluded that the *Clark* Action class members who did not opt out of the *Clark* Action are precluded from participating in this action and are not putative class members as to any purchases that took place prior to July 9, 2021. This determination is based upon the Court's conclusion that the *Clark* Action settlement has preclusive effect and meets the federal procedural due process requirements, such that any collateral attack must be denied. But that is all the Court conclusively decides today, until discovery and a motion for class certification are completed.

5.     **CONCLUSION**

Defendant's motion to dismiss will be granted in part and denied in part in accordance with the terms of this Order. Plaintiffs must file their amended complaint in line with the Court's directives within **fourteen (14) days** of this Order. The Court will enter its Pretrial Order immediately following entry of this Order. The parties are expected to carefully review

---

[9]The amended complaint should also remove the now-dismissed with prejudice unjust enrichment claim. *See supra* n. 2.

Case 2:20-cv-00869-JPS   Filed 02/07/23   Page 26 of 27   Document 49

the Court's protocols therein, and should note that extensions of time will not be looked upon favorably.

Accordingly,

**IT IS ORDERED** that Defendant S.C. Johnson & Son, Inc.'s motion to dismiss, ECF No. 42, be and the same is hereby **GRANTED in part and DENIED in part**, in accordance with the terms of this Order;

**IT IS FURTHER ORDERED** that the Court **ADOPTS** Plaintiffs' notice of voluntary dismissal of Plaintiff Owen Rosenberg, ECF No. 40; Plaintiff Owen Rosenberg's claims against Defendant S.C. Johnson & Son, Inc. be and the same are hereby **DISMISSED without prejudice**; Plaintiff Owen Rosenberg be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Plaintiffs' unjust enrichment claim be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that Plaintiffs file an amended complaint, consistent with the terms of this Order, within **fourteen (14) days** of the date of this Order.

Dated at Milwaukee, Wisconsin, this 7th day of February, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge